UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JABEZ REZENE GEBREMARIAM,<br>Petitioner,<br>v.<br>WARDEN OF CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | Case No. 1:26-cv-04552-JLT-HBK (HC)<br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART[1]<br>(Doc. 1)<br>FIVE-DAY OBJECTION PERIOD |

Petitioner Jabez Rezene Gebremariam, an immigration detainee in U.S. Immigration and Customs Enforcement ("ICE") custody at the California City Immigration Processing Center in California City, California, filed this pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 on June 12, 2026. (Doc. 1, "Petition"). Liberally construed, the Petition alleges that Petitioner's detention violates the Immigration and Nationality Act ("INA") and that his prolonged detention without a bond hearing violates procedural and substantive due process. (*Id.* at 6-7). Petitioner seeks immediate release, or alternatively, a constitutionally adequate bond

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2026).

hearing. [2] (*Id*. at 7).

Respondents contend that: (1) claim preclusion and abuse-of-the-writ doctrine bar the Petition because Petitioner previously filed a habeas petition raising the same claims, which was denied (*see Gebremariam v. Chestnut*, Case No. 1:26-cv-00293-WBS-JDP, 2026 WL 1398827, at *1 (E.D. Cal. May 19, 2026)); (2) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he entered the United States unlawfully; and (3) Petitioner's continued detention is constitutional because it will end upon conclusion of removal proceedings. (Doc. 9). Petitioner did not reply, and the deadline to do so has passed. (*See* docket).

Petitioner is a citizen of Eritrea who was detained at the border and later released on parole through the Alternatives to Detention ("ATD") program. For the reasons below, the undersigned recommends granting the Petition in part on Petitioner's procedural due process claim.[3]

## I. BACKGROUND

Petitioner is a native and citizen of Eritrea. He entered the United States without inspection on or about December 3, 2024, and was detained almost immediately thereafter. (Doc. 9-1 at 2). On or about January 15, 2025, ICE released Petition and enrolled him in the ATD program and released. (*Id*. at 4). Petitioner was served with a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) (entry without inspection) and § 1182(a)(7)(i)(I) (lacking a valid entry document). (*Id*. at 8). On December 11, 2025, ICE arrested and re-detained Petitioner at a scheduled check-in based on alleged violations of his ATD-release conditions. (*Id*. at 4).

On January 14, 2026, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order. *Gebremariam*, Case No. 1:26-cv-00293-WBS-JDP, 2026 WL 1398827, at *1. On May 19, 2026, the assigned district judge declined to adopt the magistrate

---

[2] On August 17, 2026, Petitioner moved for temporary restraining order ("TRO") and for an update and documents. (Docs. 11, 12). The Court denied the TRO as untimely the following day and advised Petitioner that it endeavors to resolve habeas petitions as expeditiously as practicable. (Doc. 13).

[3] Because the Court concludes that Petitioner's re-detention violated his procedural due process rights, it does not reach Petitioner's remaining claims.

judge's recommendation to grant the petition, denied habeas relief, and closed the case. *Id*. at Doc. 14. Petitioner filed this habeas petition on June 12, 2026. (Doc. 1).

Petitioner remains in ICE custody at the California City Immigration Processing Center. (Doc. 1).

## II. APPLICABLE LAW AND ANALYSIS

A district court may grant habeas relief to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts retain jurisdiction over habeas challenges to immigration detention that are "sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

### A. Claim Preclusion and Abuse-of-the-Writ

Respondents contend that claim preclusion and, "independently," the abuse of the writ doctrine bar the Petition. (Doc. 9 at 3). Neither doctrine applies here.

The United States Supreme Court has confirmed that claim preclusion does not bar successive habeas petitions. a first habeas petition is not res judicata to subsequent petitions. *Sanders v. United States*, 373 U.S. 1, 8 (1963). Rather, the common law abuse of the writ doctrine limits successive petitions by generally precluding claims that could have been raised in a prior petition. *See McCleskey v. Zant*, 499 U.S. 467, 479 (1991); *Mullins v. Horel*, 2008 WL 3244341, at *2 (E.D. Cal. Aug. 7, 2008), *report and recommendation adopted*, 2008 WL 4299319 (E.D. Cal. Sept. 12, 2008). Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes restrictions on second or successive habeas petitions under 28 U.S.C. 2254, those restrictions do not apply to petitions brought under § 2241. *See Barapind v. Reno*, 225 F.3d at 1100, 1110 (9th Cir. 2000); *see also Mendoza v. Warden, California City Corr. Ctr*., 2026 WL 1481759, at *2 (E.D. Cal. May 27, 2026).

Regardless, the Ninth Circuit recognized that a succeeding habeas petition filed pursuant to § 2241 may still be subject to dismissal under the common law abuse of the writ doctrine. *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011). Under the abuse of the writ

doctrine, a petitioner raising a claim that was or could have been raised previously must show either cause and prejudice or that declining to consider the claim would result in a fundamental miscarriage of justice. *Id*. at 1049. The government must first plead abuse of the writ "with clarity and particularity," at which point the burden then shifts to the petitioner to disprove abuse. *McCleskey*, 499 U.S. at 494-95.

Respondents have not met that burden. They generally argue the petition "repeats claims that were or could have been raised earlier," without identifying with particularity the claims asserted or explaining by the intervening authority does not permit reconsideration. (*See* Doc. 9). In Petitioner's prior habeas proceeding, relief was denied based on the conclusion that "noncitizens who unlawfully enter[] the United States, such as petitioner, do not possess a right under the Due Process Clause to a bond hearing prior to being re-detained by immigration authorities." *See Gebremariam*, Case No. 1:26-cv-00293-WBS-JDP, 2026 WL 1398827, at *1. After that decision, however, the Ninth Circuit rejected the relevant interpretation of § 1225(b)(2), holding that noncitizens apprehended in the interior are subject to discretionary detention under § 1226(a). *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).

This intervening authority materially changes the governing legal framework. As the assigned district judge recently held, declining to consider a successive petition under these circumstances would result in a "fundamental miscarriage of justice." *Medina v. Warden, Golden State Annex Det. Facility*, 2026 WL 2607609, at *2 (E.D. Cal. Sept. 3, 2026) (*citations omitted); see also Alexander L.C. v. Acting Dr., U.S. Immmigr. & Customs Enf't*, 2026 WL 2410043, at *2 (E.D. Cal. Aug. 18, 2026) ("controlling authority dictates a different outcome of Petitioner's claims than in the first filed Petition. To ignore [Ninth] Circuit precedent and to deny Petitioner relief would work a fundamental miscarriage of justice.").

Accordingly, neither claim preclusion nor the abuse of the writ doctrine bars the Petition. The Court therefore turns to the merits Petitioner's due process claim.

B. Due Process Claim

The Fifth Amendment's Due Process Clause protects "persons" within the United States, including noncitizens, from deprivation of liberty without due process of law. *Trump v. J.G.G.*,

604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). The scope of protection varies depending on immigration status and circumstances. *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and the Due Process Clause generally requires some form of hearing before the government deprives a person of liberty. *Id.*; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'*"); see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Petitioner argues that his re-detention and continued detention without bond hearing violates his due process rights. (Doc. 1 at 6-7). Respondents contend that Petitioner's ongoing detention is constitutionally permissible because it has a definite endpoint: the completion of removal proceedings. (Doc. 9 at 4 (citing *Demore v. Kim*, 538 U.S. 510, 513, 531 (2003)). Respondents also acknowledge that this Court has rejected the argument that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore lacks a due process right to a bond hearing. (*Id.* at 3-4).

As a threshold matter, the Court reiterates that the Ninth Circuit recently held that noncitizens apprehended in the interior of the United States are subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026); *see also, e.g., Barbosa da Cunha v. Freden*, 175 F.4th 61 (2nd Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. May 6, 2026); *Moreno Vergel v. Chestnut*, 2026 WL 32848, at *3 (E.D. Cal. Jan. 6, 2026) (collecting cases in the Eastern District of California); *but see Buenrostro-Mendez v. Bondi*, 166 4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

Within this framework, the Court turns to Petitioner's claim that his re-detention after

previous release in the ATD program, and his continued detention without a bond hearing, violates his procedural due process rights. Procedural due process requires the Court to determine: (1) whether a protected liberty interest exists; and if so, (2) what process is due. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Respondents do not dispute that Petitioner was apprehended upon entering the country and subsequently released and enrolled in the ATD program. (*See* Doc. 9 at 2; Doc. 9-1 at 4). ICE initially has discretion under § 1226(a) to detain or release a noncitizen and may release the person if satisfied that release would not pose a danger or flight risk. *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Thus, when ICE initially has discretion to detain or release a noncitizen pending removal proceedings, and chooses release, that individual has a protected liberty interest in remaining out of custody. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025). While the Court is mindful of documented violations of the ATD-release conditions (Doc. 9-1 at 5), it finds that Petitioner's initial release and time in the community created a protected liberty interest in continued release following conditional parole. *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033.

To determine what process is due, courts apply the three-factor balancing test outlined in *Mathews v. Eldridge*:[4] 424 U.S. 319, 335 (1976). Respondents briefly argue Petitioner has not "clearly shown" he is entitled to a bond hearing "even if the *Mathews* test applied here." (Doc. 6

---

[4] The Ninth Circuit has observed that the Supreme Court has not expressly applied *Mathews* to constitutional challenges to immigration. *Rodriguez Diaz*, 53 F.4th at 1206-07. Nevertheless, because district courts in this circuit regularly apply *Mathews* to procedural due process claim arising from re-detention of previously released noncitizens, the Court applies the framework here without deciding whether it provides an all "embracing test" for such claims. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002).

at 6-7).

First, the Court considers "the private interest that will be affected by the official action." *Id*. Petitioner's interest in remaining free from detention and maintaining community ties is substantial. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental'"); *see also Pinchi*, 792 F. Supp. 3d at 1033. Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Because Petitioner received no pre-deprivation custody redetermination hearing, the risk of erroneous deprivation is high, and the value of a hearing before a neutral decisionmaker is significant, particularly where Respondents do not argue that he is a flight risk or danger. *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Court considers the government's interest, including the function involved and the fiscal and administrative burdens of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 334. The government unquestionably has a substantial interest in enforcing immigration laws. It also has a sovereign interest in controlling its borders, protecting national security, and ensuring the integrity of the immigration system. But Respondents do not explain how Petitioner threatens those interests or how a hearing before a neutral decisionmaker would undermine them. Nor do they offer evidence that such a hearing would impose more than a minimal fiscal or administrative burden. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citation omitted). Because Respondents provided neither notice nor reasons before re-detaining Petitioner, they have not shown a significant governmental interest in denying him a hearing. *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation*

*adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

On this record, the *Mathews* factors weigh in Petitioner's favor, and the Court concludes his re-detention without a hearing violated his procedural due process rights.

C. Conclusion and Remedy

The remaining issue is the remedy required for Petitioner's due process violation. Although due process generally requires a hearing before the government deprives a person of liberty, a prompt post-deprivation hearing may suffice where pre-deprivation process is impracticable. *See Zinermon v. Burch*, 494 U.S. 113, 127–28 (1990).

As the assigned district judge previously explained:

> Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of an immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.
>
> ***12** In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:
>
>> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL

> 2381464, at *8 (E.D. Cal. Aug. 15, 2025), *citing Perera v. Jennings, et al*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at *11-12.

Here, Respondents identify multiple alleged ATD-release violations, including missed biometric check-ins, disabled location services, and Petitioner's absence from a scheduled home visit. (Doc. 9-1 at 4-5). On this record, the undersigned finds immediate release is not warranted. Instead, the undersigned recommends that Respondents provide Petitioner with a prompt, post-deprivation bond hearing under § 1226(a). *See M.R.R.*, 2025 WL 3265446, at *11-12.

At that hearing, the government must establish by clear and convincing evidence that Petitioner poses a danger to the community or flight risk. See *Yosseline P.G. v. Noem*, 2026 WL 183732, at *5 (E.D. Cal. Jan. 23, 2026); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025).

Accordingly, IT IS RECOMMENDED:

1. The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED IN PART.
2. Respondents be directed to provide Petitioner a substantive bond hearing under 8 U.S.C. § 1226(a). At that hearing, the government must prove by clear and convincing evidence that the Petitioner poses a danger to the community or flight risk.
3. If Petitioner is released, Respondents be permanently enjoined from re-arresting or re-detaining him unless they comply with constitutional due process requirements, including: (a) at lease seven days' pre-deprivation notice; and (b) a pre-deprivation hearing at which the government bears the burden to prove, by clear and convincing evidence, that Petitioner is likely to flee or pose a danger if not detained.
4. If legally sufficient circumstances justify arrest without advance notice, Respondents must provide a post-deprivation hearing consistent with these requirements within

seven days of the arrest. If Petitioner becomes subject to a final order of removal and receives notice of that order, Respondent may detain him solely to execute removal, but must provide a bond hearing required by law within the applicable timeframe.

5. This case be CLOSED.

**NOTICE OF EXPEDITED OBJECTIONS**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id.*; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: September 23, 2026

Helena M. Barch-Kuchta

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE